UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-63005-CIV-ALTMAN/Hunt

**ALICE BARNETT-MENZER**,

    *Plaintiff*,

v.

**ANDREW SAUL**,
*Commissioner of the Social Security Administration*,

    *Defendant*.
_____/

## ORDER

The Plaintiff, Alice Barnett-Menzer, appeals the Defendant's[1] termination of her Social Security Disability Benefits. The primary question we must address in this Order is whether, in terminating the Plaintiff's benefits, the Social Security Administration's Administrative Law Judge ("ALJ") properly compared the Plaintiff's current medical condition to her prior one. Because we find that the ALJ did make this comparison, we affirm the ALJ's decision.

### PROCEDURAL HISTORY

The parties have filed cross-motions for summary judgment—*see* Plaintiff's Motion for Summary Judgment ("Pl. MSJ") [ECF No. 12]; Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def. MSJ") [ECF No. 14]—which this Court referred to United States Magistrate Judge Patrick M. Hunt for a Report and Recommendation (the "Report"). *See* Clerk's Notice of Assignment [ECF No. 2].

---

[1] The Defendant is the Commissioner of the Social Security Administration.

1

The Magistrate Judge recommended that this Court deny the Plaintiff's MSJ and grant the Defendant's MSJ. *See* Report [ECF No. 17] at 8. The Plaintiff timely objected. *See* Objections [ECF No. 18]. The Court has conducted a *de novo* review of those portions of the Report to which the Plaintiff has objected.[2] For the following reasons, the Court now **OVERRULES** the Plaintiff's Objections and **ADOPTS** the Report.

## THE FACTS

The Plaintiff alleges that the Defendant erroneously *terminated* her Social Security benefits. *See* Compl. [ECF No. 1] at 1. The Plaintiff first applied for Title II disability insurance benefits on January 16, 2004. *See* Report at 1. In 2006, an ALJ—citing the reports of the Plaintiff's orthopedist (Dr. Dominic Kleinhenz); her pain-management physician (Dr. Sami Dagher); a state agency's non-examining, non-treating physician (Dr. I.B. Price); and a quality-assurance examiner (Ellen Shelton)—found the Plaintiff disabled as of January 16, 2004, with a primary diagnosis of reflex sympathetic dystrophy. *See id.* at 2; *see also* 2006 Comparison Point Decision ("CPD"), Ex. 1A [ECF No. 7] at 73, 80.

Twelve years later, in October 2016, the Social Security Administration ("SSA") determined that the Plaintiff's condition had improved and that she was no longer disabled. *See* Report at 2. At a rehearing—conducted at the Plaintiff's request—the ALJ heard testimony from two witnesses: the Plaintiff and a vocational expert. *See* ALJ Decision [ECF No. 7] at 15; Report at 2; Transcript of 10/18/2018 Oral Hearing [ECF No. 7] at 70–72. A few months after that hearing, on February 13,

---

[2] *See* FED. R. CIV. P. 72(b)(3) ("*Resolving Objections.* The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). The Court has also reviewed the unobjected-to portions of the Report for clear error and, finding none, adopts those, too. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

2019, the ALJ issued her final decision, in which she found *both* that the Plaintiff's disability had ended on June 1, 2016 *and* that the Plaintiff "has not become disabled again since that date." ALJ Decision at 15. After the Social Security Appeals Council denied her request for review, the Plaintiff, having exhausted her administrative remedies, filed this Complaint, in which she asks the Court to overturn the ALJ's decision. *See* Report at 1–2; *see also* Compl.

To determine whether a claimant suffers from a continuing disability, the ALJ must conduct a multi-step inquiry—which, in turn, requires the ALJ to ask the following questions:

> (1) whether the claimant is engaging in substantial gainful activity; (2) if not gainfully employed, whether the claimant has an impairment or combination of impairments that meets or equals a listed condition; (3) if impairments do not meet a listing, whether there has been medical improvement; (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work; (5) if there is improvement not related to the claimant's ability to do work, whether an exception to medical improvement applies; (6) if medical improvement is related to the claimant's ability to do work or if an exception applies, whether the complainant has a "severe impairment"; (7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and (8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

*Klaes v. Comm'r of Soc. Sec.*, 719 F. App'x 893, 895 (11th Cir. 2017) (citing 20 C.F.R § 404.1594(f)).

At Step One, the ALJ found that, as of the date of her ruling (February 13, 2019), the Plaintiff had not engaged in substantial gainful activity. *See* ALJ Decision at 16–17. At Step Two, the ALJ determined that, since June 1, 2016—and according to the medical evidence—the Plaintiff suffered from "complex regional pain syndrome, anxiety, migraine, thyroid disorder and chronic fatigue," but that, "[s]ince June 1, 2016, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 17. Specifically, the ALJ concluded that "the claimant does not have anxiety and obsessive-compulsive disorders"—at least not to a degree of severity that would "meet or medically equal" a listed impairment. *Id.*

3

At Step Three, the ALJ used as a comparison point the SSA's 2006 CPD, which was the last time an ALJ had found the Plaintiff disabled.[3] *Id.* at 16–18. From there, the ALJ pointed out that, by June 1, 2016, the Plaintiff's medical impairments had improved. *See id.* (noting that "there had been a decrease in medical severity of the impairments present at the time of the CPD"). *Id.* at 18.[4]

This conclusion required the ALJ to proceed to Step Four—where the ALJ must ask whether the Plaintiff's medical improvement was related to her ability to work. *Id.* The ALJ answered this question by noting that the Plaintiff's medical improvement "represents an increase in functional capacity for basic work activities *when compared to the residual functional capacity the claimant had at the time of the CPD.*" *Id.* (emphasis added). Since the ALJ found that the Plaintiff's improvements *were* related to her ability to do work, the ALJ proceeded to Step Six. *See* Report at 3; ALJ Decision at 18; *see also* 20 C.F.R. § 404.1594(f)(4) ("If medical improvement is related to your ability to do work, see step (6).").

If, at Step Six, the evidence shows that "all [the claimant's] current impairments in combination do not significantly limit [the claimant's] physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, [the claimant] will no longer be considered disabled." 20 C.F.R. § 404.1594(f)(6). At this step, the ALJ determined that, since June 1, 2016, the Plaintiff's impairments "did not cause more than a minimal impact on the claimant's ability to perform basic work activities[,]" which "are the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting" and "[u]nderstanding, carrying out, and remembering simple

---

[3] The Plaintiff and the ALJ suggest that this 2006 decision was issued on May 8, 2006, *see* Pl. MSJ at 2; ALJ Decision at 15, while the Defendant and the Magistrate Judge use an earlier date of April 18, 2006, *see* Def. MSJ at 4; Report at 1. The confusion appears to stem from the fact that the decision is *dated* April 18, 2006, even though it *took effect* on May 8, 2006. *See* 2006 CPD at 74–75. No problem. Since everyone appears to be referring to the same 2006 "comparison point decision," this Court will refer to it as the "2006 CPD."

[4] At the time of the 2006 CPD, the Plaintiff suffered from "reflex sympathetic dystrophy syndrome, complex regional pain syndrome secondary to peroneal nerve injury in the left lower extremity" that "result[ed] in the residual functional capacity to perform less than a full range of even sedentary work." ALJ Decision at 17.

instructions[.]" ALJ Decision at 18. The ALJ thus concluded that "the claimant's impairments *present at the time of the CPD* were no longer severe as of June 1, 2016," and that the Plaintiff's disability had ended as of that day. *Id.* at 18, 26–27 (emphasis added).

In reaching this decision, the ALJ considered the Plaintiff's testimony, where she had detailed the various ways in which her pain impeded her daily life. *See id.* at 19–20. Nevertheless, the ALJ held that, while "the [Plaintiff's] medically determinable impairments could have reasonably been expected to produce the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence." *Id.* at 20 (citing SSR 16-3p). In saying so, the ALJ compared the Plaintiff's 2016–2018 medical records to the documentation supporting the 2006 CPD. *Id.* at 20–26. The ALJ also reviewed a 2016 report from the Plaintiff's husband and an investigation report from the Cooperative Disability Investigations (CDI) Unit (dated June 8, 2016). *Id.* (describing 2016 CDI Report, Ex. 6D [ECF No. 7] at 197–205). In that 2016 CDI Report, a CDI investigator reported that she had surveilled the Plaintiff walking her dogs and driving her car—seemingly without difficulty. *Id.* The ALJ's conclusion—that the Plaintiff's statements were unsupported by the medical evidence and that the Plaintiff's symptoms had improved since the 2006 CPD—led the ALJ to find that the Plaintiff was no longer disabled. *Id.* at 20. The Plaintiff now appeals that decision.

## STANDARD OF REVIEW

The Court's review of an ALJ's decision is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This determination—whether the ALJ applied the correct legal standard—is a legal one subject to *de novo* review. *Graham v. Bowen*, 90 F.2d 1572, 1575 (11th Cir. 1986) (cleaned up). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148,

5

1154 (2019). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Court may not, however, "reweigh the evidence, or substitute [its] judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (cleaned up).

## THE REPORT AND OBJECTIONS

The Plaintiff told the Magistrate Judge that the ALJ had erred in one way. As she saw it: "The ALJ's determination that Plaintiff no longer has an impairment or combination of impairments that significant [sic] limits her ability to perform basic work activities is not supported by substantial evidence." Pl. MSJ at 1, 16. More specifically, the Plaintiff contended that the ALJ failed to "compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence." *Id.* at 18 (citing *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985)). The ALJ, the Plaintiff insisted, had only "summarized" and "engaged in no discussion of the evidence[,]" "much less a discussion of the evidence that could be construed as a 'comparison'" of the original medical evidence and the new medical evidence. *Id.* To underscore her point, the Plaintiff asserted that her "original records were not even a reference point upon which the ALJ based his decision of medical improvement. Thus, it cannot be said that he made a proper comparison as required by the law of this Circuit." [5] *Id.* at 22. "Rather, the entire[t]y of the ALJ's decision appears to be based upon a single investigation, conducted by the Miami CDI on June 9, 2016." *Id.*

The Magistrate Judge found this argument unpersuasive and recommended that the Plaintiff's MSJ be denied. Report at 8. The Magistrate Judge conceded that, while "the ALJ could have perhaps used more explicitly comparative language, it is clear from her decision in its entirety that she

---

[5] The Plaintiff repeatedly refers to the ALJ—Valencia Jarvis—as "he" and "him."

compared and contrasted the medical evidence from the previous CPD to the current medical evidence." *Id.* at 7.

In her Objections, the Plaintiff does little more than repeat—often verbatim[6]—the arguments she advanced in her MSJ. *See generally* Objections. Many of her "objections" are thus procedurally improper. *See Holland v. Colvin*, 2015 WL 1245189, at *3 (N.D. Ala. Mar. 18, 2015) (holding that, in objecting to an R&R, a party may not simply restate the arguments it presented to the magistrate judge (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937–38 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented[,] is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."))).

In any event, what the Plaintiff characterizes as her single Objection—that "[t]he ALJ's determination that Plaintiff no longer has an impairment or combination of impairments that significantly limits her ability to perform basic work activities is not supported by substantial evidence," Objections at 1—is really four separate objections sandwiched together. *First*, the Plaintiff insists that "the Magistrate Judge wrongfully concluded that the ALJ properly compared and contrasted the medical evidence from the previous CPD with the current medical evidence." *Id. Second*,

---

[6] *Compare, e.g.*, Pl. MSJ at 17 ("The ALJ concluded, at step three of this process, that the medical evidence supported a finding that, by June 1, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD. In support of this contention, the ALJ purported to consider Plaintiff's symptoms and whether they were consistent with the objective medical evidence and other evidence as well as the pinion [sic] evidence. However, the ALJ's review of this evidence does not comport with the Regulations or the law of this Circuit. This is error." (cleaned up)), *with* Objections at 1 ("At bar, the ALJ concluded, at step three of this process, that the medical evidence supported a finding that, by June 1, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD. In support of this contention, the ALJ purported to consider Plaintiff's symptoms and whether they were consistent with the objective medical evidence and other evidence, as well as the opinion evidence. However, the ALJ's review of this evidence does not comport with the Regulations or the law of this Circuit. This is error." (cleaned up)).

the Plaintiff alleges that the Magistrate Judge failed to address the ALJ's "heavy" reliance on the 2016 CDI Report. *Id.* at 4. Here, the Plaintiff asserts that "heavy reliance on daily activities to discredit a Plaintiff's testimony regarding her pain is inappropriate." *Id. Third*, the Plaintiff objects that "the current medical records, when compared to the previous medical records, do not, *in any way*, demonstrate medical improvement." *Id.* at 3. *Fourth*, the Plaintiff maintains that the "ALJ made no connection between Plaintiff's ability to walk outside so that her small dogs could relieve themselves with her ability to engage in sustained work activity as contemplated by SSR 96-8p." *Id.* at 4.

The Defendant failed to respond to these Objections, *see* Docket, and the time to do so has passed, *see* S.D. FLA. L.R. MAGISTRATE RULES 4(b) ("Any party *may* respond to another party's objections . . . ." (emphasis added)). Since the Defendant had no obligation to respond, its failure to do so does not preclude summary judgment here. *See Almodovar v. Berryhill*, 2017 WL 6947442, at *1 (S.D. Fla. Nov. 30, 2017) (Scola, J.) ("grant[ing] the Commissioner's motion for summary judgment" even though "the Commissioner did not submit a response" to the plaintiff's objections to the magistrate judge's report and recommendation).

**ANALYSIS**

**I.     OBJECTION I: NO COMPARISON**

In her first Objection, the Plaintiff argues that the ALJ "engaged in *no discussion* of the evidence that could be construed as a 'comparison' between the evidence prior to and after" the 2006 CPD. Objections at 3 (emphasis added); *see also id.* at 4 (repeating that the ALJ "engaged in *no comparison* between the prior medical and the more recent medical evidence" (emphasis added)). The Plaintiff is simply mistaken.

"A claimant's continued entitlement to disability benefits must be reviewed periodically." *Gombash v. Comm'r of Soc. Sec.*, 566 F. App'x 857, 858 (11th Cir. 2014) (citing 20 C.F.R. § 404.1594(a)). The Commissioner may terminate benefits "upon finding there has been medical improvement in the

8

claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant is now able to engage in substantial gainful activity." *Id.* (citing 42 U.S.C. § 423(f)(1)). Medical improvement is defined as:

> any decrease in the medical severity of your impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).

20 C.F.R. § 404.1594(c)(1). While "a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement[,]" *McAulay*, 749 F.2d at 1500 (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)), "there is no strict requirement for evaluation of prior objective findings," *Plain v. Saul*, 2021 WL 647135, at *6 (S.D. Fla. Jan. 29, 2021) (citing 20 C.F.R. §404.1594(c)(1)), *report and recommendation adopted*, 2021 WL 633764 (S.D. Fla. Feb. 18, 2021). Thus, although the regulations require the ALJ to compare the original supporting medical evidence with the recent medical evidence, "[i]t is not clear . . . that the regulations require that the ALJ evaluate and compare *every item* of medical evidence available at the time of the CPD." *Trombetta v. Comm'r of Soc. Sec.*, 2018 WL 7116085, at *6 (M.D. Fla. Dec. 20, 2018), *report and recommendation adopted*, 2019 WL 314570 (M.D. Fla. Jan. 24, 2019) (emphasis added & cleaned up).

The Plaintiff contends that the ALJ conducted "*no* comparison" between her more recent records (2016–18) and her 2006 records. Objections at 4 (emphasis added). In saying so, the Plaintiff analogizes her case to *McAulay*, *see id.* at 3, where the Eleventh Circuit reversed the district court's order terminating the claimant's benefits because, "[w]hile the original medical records are referred to by the ALJ, *no comparison* was made in this case." 749 F.2d at 1500 (emphasis added). As the emphasized portion indicates, however, *McAulay* is inapposite here because our ALJ *did* compare the record supporting the 2006 CPD to the current medical evidence and found that the Plaintiff had shown "improvement." ALJ Decision at 24; *see* Report at 5–6.

An "ALJ's references to 'improvement' implie[s] a comparison to [a plaintiff's] condition during the disability period" and allows a reviewing court to "draw the specific and legitimate inference that the ALJ compared the medical evidence from the date of possible improvement to the medical evidence used to determine that [a plaintiff] was disabled." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (cleaned up) (citing *Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)); *see also Trombetta*, 2018 WL 7116085, at *6 (finding that "the ALJ actually compared prior and current medical evidence at least to the extent of acknowledging that prior evidence showed active cancer and current evidence showed no cancer").

After poring over the Plaintiff's *recent* medical records (2016–18), the ALJ noted that, in 2006, Dr. Kleinhenz had found that "the claimant could stand for 1 hour," "sit for 8 hours," and "walk less than 1 hour out of an 8-hour workday, lift up to 20 pounds occasionally and would need to lie down 'substantial periods[.]'" ALJ Decision at 24–25. The ALJ then observed that "this [Dr. Kleinhenz's report] is an old record (March 2006) and there are more recent records showing *improvement* subsequent to this report[.]" *Id.* (emphasis added). By reviewing the two sets of records—Dr. Kleinhenz's report and the Plaintiff's "more recent records"—and finding the one more probative than the other, the ALJ was necessarily *comparing* the two.[7] And, as in *Attmore*, the ALJ's reference to "'improvement' implied a comparison." *Attmore*, 827 F.3d at 877.

The ALJ's explicit comparison between Dr. Kleinhenz's 2006 report and the more recent evidence thus belies the Plaintiff's contention that the ALJ engaged in "*no* comparison" at all. And the Plaintiff never makes the subtler argument—that the ALJ's failure to compare *every* document from the 2006 CPD to the recent medical evidence constitutes reversible error, probably because there is

---

[7] *See compare*, *Merriam-Webster Unabridged*, https://www.merriam-webster.com/dictionary/inconsistent (last visited Mar. 30, 2021) (defining *to compare* as follows: "to examine the character or qualities of especially in order to discover resemblances or differences; to view in relation to").

no such rule. As far as this Court is aware, neither the Eleventh Circuit nor any district court within it has ever held that an ALJ must compare every last shred of old evidence—no matter how duplicative—to the new records before a determination of improvement can be made. To the contrary, the cases are uniform in reversing the ALJ's findings of improvement *only* where "*no comparison was made.*" *McAulay*, 749 F.2d at 1500 (emphasis added).[8] Indeed, as we've said, the Ninth Circuit has even upheld an ALJ's "improvement" finding without an explicit comparison where the ALJ's "references to 'improvement' . . . implied a comparison." *Attmore*, 827 F.3d at 877.

Notably, at least one court in our Circuit has held that the ALJ's failure "to obtain all the prior medical evidence used to initially determine Plaintiff was disabled" was harmless error, where the ALJ's finding was, as here, supported by substantial evidence. *See Trombetta*, 2018 WL 7116085, at *6. Harmless error, of course, implies *some* error. Now, as we've said, an ALJ need not compare every old medical report to the new evidence when her findings are otherwise supported by substantial evidence—particularly where the old reports are redundant and (largely) duplicative. But, even if the ALJ were obliged to compare every old record to the new evidence, an ALJ's omission of *some* of that old evidence would still constitute harmless error so long as it did not "result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *see also id.* ("In evaluating the necessity for a remand, we are guided by whether the record revealed evidentiary gaps which result in unfairness or clear prejudice." (cleaned up)). And it's the Plaintiff who bears the burden of showing that the error

---

[8] *See also, e.g., Klaes*, 719 F. App'x at 897 (reversing and remanding because the "ALJ *did not mention, much less compare*, the medical evidence of [plaintiff] Klaes's impairments" that had supported the 2003 CPD (emphasis added)); *Olivo v. Colvin*, 2017 WL 708743, at *5 (M.D. Fla. Jan. 30, 2017) ("[T]he ALJ at no point in the Decision discussed or cited the medical evidence predating the CPD. . . . Accordingly, the ALJ's finding that 'medical improvement occurred as of January 1, 2012' cannot stand[.]" (cleaned up)); *Santiago v. Barnhart*, 386 F. Supp. 2d 20, 23 (D.P.R. 2005) (holding that "there is no basis on the record to support the ALJ's finding that [claimant] is no longer disabled" because "[t]here does not seem to be *any* such comparison in the ALJ's decision" (emphasis added)).

11

wasn't harmless. *See Trombetta*, 2018 WL 7116085, at *6.[9] But the Plaintiff has advanced no harmless-error arguments here, *see generally* Pl. MSJ; Objections—and so, she's waived the point, *see, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.").

In any event, as we've suggested, the Plaintiff cannot show that she was prejudiced by the ALJ's failure to cite *every* medical record from 2006 because the ALJ expressly compared the 2006 CPD's overall *findings* to the current medical evidence and found "improvement." As the ALJ explained, "here [in 2006] it was said that on her *left* foot it was painful to stand or walk any distance, however, this is not supported by the objective evidence in the record." ALJ Decision at 25 (emphasis added). This reference to pain in the Plaintiff's *left* foot was a reference to the 2006 CPD, which is

---

[9] *See also Gombash v. Comm'r of Soc. Sec.*, 566 F. App'x at 858 ("The burden ultimately rests with the claimant to prove that he is disabled and entitled to Social Security benefits." (citing 20 C.F.R. § 404.1512(a))); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982) ("We must ascertain whether the Secretary's finding of improvement to the point of no disability is supported by substantial evidence. In each case, the burden remains with the claimant to prove the existence of a disability."), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991); *accord Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir. 1981) ("In a case in which benefits have been terminated, as in a case in which benefits have been denied, the burden of proving disability is on the claimant, not on the Secretary." (quoting *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972))); *Tomaszewski v. Colvin*, 2015 WL 893523, at *3 (M.D. Ga. 2015) (stating that the Eleventh Circuit has "clearly explained that even in benefits continuation cases, the burden remains with the claimant to prove the existence of a disability, and only the inquiry changes." (cleaned up) (quoting *Simpson*, 691 F.2d at 969)); *Fields v. Harris*, 498 F. Supp. 478, 488 n.5 (N.D. Ga. 1980) ("The claimant bears the ultimate burden of proving his disability. This is true whether the case involves an initial application for disability benefits or an appeal of the secretary's decision to terminate benefits, i.e., a cessation case." (citing *McCarty v. Richardson*, 459 F.2d 3, 4 (5th Cir. 1972))).

replete with details about the pain in the Plaintiff's *left* foot.[10] Indeed, in the same paragraph in which she recounted the 2006 evidence of left foot pain, the ALJ noted that Dr. Ronald L. Seifer, a psychologist who saw the Plaintiff in 2016, corroborated the 2006 findings by "observ[ing] [the claimant] walking with a slow, careful gait." *Id.* (citing Seifer Report, Ex. 16F [ECF No. 7] at 506–09).

But the ALJ rejected these findings—both the ones from 2006 *and* Dr. Seifer's from 2016—as "inconsistent" with the more recent records. *Id.* The latter included the May 2016 medical reports from the offices of IDL Medical, which determined that the Plaintiff's "gait was normal, muscle strength was normal and there were no motor or sensory deficits as well as no deformities or tenderness of the extremities. Further, her mood and affect were unremarkable. In fact, the claimant admitted that she felt well." *Id.* at 24 (citing IDL Medical Treatment Records, 05/04/2016–05/17/2016, Ex. 13F [ECF No. 7] at 488–90). And, the ALJ added, the 2006 records were inconsistent with the July 2016 treatment records from Resolute Pain Solutions, which concluded that "[the Plaintiff] was able to dorsiflex and plantar flex her left foot, strength was 5/5 in all muscle groups," and noted that she "admitted to 80–90% relief with left lumbar sympathetic blocks." *Id.* (citing Resolute Pain Solutions Treatment Records, 06/27/2016–10/18/2017, Ex. 21F [ECF No. 7] at 558–87). Finally, the ALJ found the 2006 evidence inconsistent with the 2016 CDI Report, which observed that the Plaintiff "showed good dexterity and strength" in her "legs as she demonstrated no apparent discomfort, while walking, maintaining control of her dogs or when lifting her legs" and added that

---

[10] *See, e.g.*, 2006 CPD, Ex. 1A [ECF No. 7] at 80–82 ("Sami Dagher, M.D. the claimant's pain management physician, on March 7, 2006 diagnosed *left* lower extremity sympathetically mediated pain." (emphasis added)); *id.* at 81 ("[I]t had been agreed upon by all treating sources and the records indicated the claimant had not responded well to treatment with continuing severe pain as well as swelling discoloration, reduced range of motion and severe sensitivity in the *left* ankle and foot." (emphasis added)); *see id.* at 80 ("Dr. Kleinhenz diagnosed the claimant with a complex regional pain syndrome secondary to peroneal nerve injury in the *left* lower extremity[,]" "defined her pain as being 'moderately severe" in nature[,]" "stated the claimant could sit eight hours, stand one hour and walk less than one hour in an entire eight hour day," and concluded that "[l]ifting would be limited to twenty pounds with no repetitive sustained usage of the *left* lower extremity" (emphasis added)).

13

she "maintained good balance and . . . ambulated with a steady pace." *Id.* at 21 (citing 2016 CDI Report, Ex. 6D [ECF No. 7] at 197–205).

The ALJ's conclusion that the 2016–18 records were "inconsistent" with something else necessarily implies that the 2016–18 evidence was "not compatible with another fact or claim." *See inconsistent*, *Merriam-Webster Unabridged*, https://www.merriam-webster.com/dictionary/inconsistent (last visited Mar. 30, 2021). And, as we've seen, the other "fact or claim" with which the 2016–18 evidence was "inconsistent" was the Plaintiff's (claimed) debilitating foot pain—which, in turn, the ALJ drew from the 2006 reports, as corroborated by the 2016 observations of Dr. Seifer.

The ALJ, in short, engaged in extensive summaries of both the 2005–06 and 2016–18 evidence, *see* ALJ Decision at 26–27; compared the 2005–06 evidence—citing specifically to Dr. Kleinhenz's 2006 report—to the recent medical reports, *see id.* at 24–26; and found "improvement" in the Plaintiff's functionality and pain relief over time, *see, e.g.*, *id.* at 24–25. The record is thus sufficient for the Court to **OVERRULE** the Plaintiff's first Objection, which inaccurately criticized the ALJ for engaging in "*no* comparison" at all. *See* Objections at 4 (emphasis added).[11]

---

[11] The ALJ gave "little weight" to the December 23, 2005 opinion of an Edward Holfield, M.D.—the state agency's medical consultant who had stated in 2005 that the Plaintiff *could* walk, stand, and carry certain things—because it was "not supported by the objective medical evidence of record at that time, which noted the claimant was not able to heel or toe walk." ALJ Decision at 25 (citing Physical RFC Assessment by Edward Holfield, M.D., 12/23/2005, Ex. 5F [ECF No. 7] at 355–62). But the 2006 CPD cited the reports of a different doctor—I.B. Price, M.D.—which were dated July 25, 2005 and August 15, 2005. *See* 2006 CPD at 80 (noting that the "state agency non-examining non-treating physician, I.B. Price, M.D. on both July 25, 2005 and August 15, 2005 reviewed the claimant's file" and determined that the Plaintiff had "reflex sympathetic dystrophy, dystrophic phase and stated that he believed she is capable of 'minimal sedentary level work with restrictions'"). And Dr. Price's reports appear nowhere in our record—a regrettable omission, to be sure. But no one—not the ALJ or the Commissioner or the Magistrate Judge, not even the Plaintiff—ever mentions this discrepancy. The Plaintiff, we suppose, could have pointed to this lacuna as evidence that the record is incomplete, that the ALJ's decision was erroneous, and that the ALJ's error wasn't harmless. But, by not asserting any of these claims—indeed, by failing even to note the absence of Dr. Price's reports—she has waived any such objection here, *see (again) Hamilton*, 680 F.3d at 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."). We add here only that, had she raised the issue, the Plaintiff would've had a steep hill to climb because Dr. Price never treated her and did

14

## II.     OBJECTION II: THE 2016 CDI REPORT

In her second Objection, the Plaintiff argues that the Magistrate Judge "did not even address the ALJ's heavy reliance on this singular incident"—by which she means the 2016 CDI Report's observations. Objections at 4. This Objection is likewise unfounded.

It's true that "participation in everyday activities of short duration," like household chores, "should not disqualify a claimant from disability." *Varner v. Astrue*, 2011 WL 1196422, at *6 (M.D. Fla. Mar. 29, 2011) (cleaned up) (quoting *Lewis*, 125 F.3d at 1441). But, when an ALJ assesses "the evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms," then "[a] claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints." *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) (citing *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984)).

There was thus nothing untoward about the ALJ's decision to use the 2016 CDI Report's observations of the Plaintiff's "daily activities" in "evaluating and discrediting" the Plaintiff's "subjective complaints." Nor has the Plaintiff cited any case for the proposition that there was. It's true, perhaps, that an ALJ shouldn't rely *exclusively* on an undercover investigator's "singular" report of a claimant's daily activities. Objections at 4. But that's not what we have here. As the Magistrate Judge correctly noted, the ALJ relied on a wide array of recent evidence, including "the CDI investigative report, the *multiple* medical opinions from 2016 to 2018, and the state agency reviewing medical consultant's report[.]" Report at 7 (emphasis added). The ALJ did, admittedly, afford "great weight" to the opinion of the medical consultant who, in turn, relied on the June 2016 surveillance of

---

little more than summarize the findings of other doctors that *do* appear elsewhere in the 2006 CPD. *See* 2006 CPD at 80. Since the ALJ *did* compare those other findings—including and especially the findings of Dr. Kleinhenz—to the recent medical evidence, it's likely that the ALJ's failure to reference Dr. Price's summations would've constituted (at most) harmless error. *See (again) Trombetta*, 2018 WL 7116085, at *6 (finding harmless the ALJ's failure "to fully develop the record by failing to obtain all the prior medical evidence used to initially determine Plaintiff was disabled").

15

the Plaintiff—in which she was seen walking her dogs and driving her car without incident. ALJ Decision at 25–26. But the ALJ also "clearly articulated explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In fact, the ALJ explained that she afforded the CDI "great weight" only because "it is *supported by* Exhibit[s] 13F [the IDL Medical Treatment Records] and 21F [the Resolute Pain Solutions Treatment Records] and the other evidence found in the medical record." ALJ Decision at 26 (emphasis added).

These medical reports, in turn, corroborated the CDI's findings and undermined the Plaintiff's testimony. So, for example, according to the IDL Medical Treatment Records, the "Patient denies muscle pain, muscle swelling, joints pain, joint stiffness, limitation of motion, weakness, muscle atrophy, or cramps[.]" IDL Medical Treatment Records, 05/24/2016–05/27/2016, Ex. 13F [ECF No. 7] at 488–89. They also noted that the Plaintiff's "[m]otor examination reveals normal gait, normal heel-to-toe movement, and normal strength bilaterally." *Id.* And, in fact, they pointed out that the Plaintiff admitted "she fe[lt] well." *Id.* at 488. The Resolute Pain Solutions Treatment Records, meanwhile, observed that the "lumbar sympathetic blocks" Dr. Steven Stein had used to treat the Plaintiff more than a year before had "provided her substantial long-lasting relief[.]" Resolute Pain Solutions Treatment Records, 06/27/2016–10/28/2017, Ex. 21F [ECF No. 7] at 560. Indeed, Dr. Stein noted that the Plaintiff "has had excellent pain relief following lumbar sympathetic blocks." *Id.* at 562. The Resolute records also reveal that, even when the Plaintiff experienced pain in her left foot in 2017, her doctor observed a "[n]onantalgic and non-spastic gait pattern" that allowed her "to elevate on heels and toes." *Id.* at 560–61. As we've seen, the medical evidence from the 2006 CPD specifically found that the Plaintiff was "not able to heel or toe walk." ALJ Decision at 25. Even without any reference to the 2016 CDI Report, then, these 2016–17 medical records strongly supported the ALJ's finding of "improvement."

The Court thus **OVERRULES** the Plaintiff's second Objection.

### III.   OBJECTION III: SUBSTANTIAL EVIDENCE

In her third Objection, the Plaintiff offers a more general critique. The ALJ and the Magistrate Judge (she says) were simply wrong to conclude that the Defendant's decision to terminate her benefits was supported by substantial evidence. *See* Objections at 1, 5.

But substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. Labor Bd.*, 305 U.S. 197, 229 (1938)). "When a decision is supported by substantial evidence, we must affirm, even if we find that the evidence preponderates against the Commissioner's decision." *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 708 (11th Cir. 2015) (cleaned up) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). This Court may not "reweigh the evidence, or substitute [its] judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth*, 703 F.2d at 1239 (11th Cir. 1983) (citation omitted).

The ALJ's Decision is no model of clarity. But its central finding that the Plaintiff's condition has improved is supported by a substantial and eclectic variety of medical and non-medical sources. These include the CDI Report, the state agency medical consultant's report, the IDL Medical Treatment Records, and the Resolute Pain Solutions Treatment Records—all of which (as we've seen) the ALJ properly analyzed, summarized, and compared to the 2006 CPD. We cannot here second-guess the result.

The Plaintiff's third Objection to the Report is, therefore, **OVERRULED**.

### IV.   OBJECTION IV: CLEAR ERROR

In her fourth Objection, the Plaintiff criticizes the ALJ for making "no connection between the Plaintiff's ability to walk outside so that her small dogs could relieve themselves with her ability to engage in sustained work activity[.]" Objections at 4.

Here, the Plaintiff challenges only the *ALJ's* underlying decision—rather than the Magistrate Judge's Report. This Objection is thus procedurally improper because it fails to explain how the *Magistrate Judge* erred. Were we to ignore the Magistrate Judge's findings and allow parties to re-raise arguments they've already presented to the Magistrate Judge, we'd eviscerate the substantial benefits that magistrate judges provide. *See Holland*, 2015 WL 1245189, at *3 (holding that, in objecting to an R&R, a party may not simply restate the arguments it presented to the magistrate judge (citing *VanDiver*, 304 F. Supp. 2d at 937–38 ("A general objection, or one that merely restates the arguments previously presented[,] is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context."))). Since this final Objection is improper, we review it only for clear error. *See* FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been *properly objected to*." (emphasis added)).

In any event, the fourth Objection assumes that the ALJ's finding that the Plaintiff could return to work was drawn exclusively from the observations of the 2016 CDI Report. But, as we've shown, the ALJ explained that the "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the *objective medical* and other evidence." ALJ Decision at 20 (emphasis added). She also determined that, since June 1, 2016, the Plaintiff's impairments "did not cause more than a minimal impact on the claimant's ability to perform basic work activities." *Id.* at 18. And she concluded that "the claimant has not had a severe impairment or combination of impairments since June 1, 2016." *Id.* at 27. As we've indicated, the ALJ made these findings only after reviewing a mountain of documentary evidence, which included the medical observations of different doctors—some at Resolute Pain Solutions; others at IDL Medical—who treated the Plaintiff over several years. Although the ALJ corroborated these medical observations

with the surveillance detailed in the 2016 CDI Report, she never said—and we don't take her to have suggested—that her findings derived exclusively (or even mostly) from a "singular" dog-walking incident.

Because the Report hasn't left this Court "with a definite and firm conviction that a mistake has been committed," *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997), the Plaintiff's final Objection is likewise **OVERRULED**.

\*\*\*

Having carefully reviewed the record and the governing law, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The Report [ECF No. 17] is **ADOPTED as set out in this Order**.
2. The Plaintiff's Motion for Summary Judgment [ECF No. 12] is **DENIED**.
3. The Defendant's Motion for Summary Judgment [ECF No. 14] is **GRANTED**.
4. The Clerk shall **CLOSE** this case.
5. All other pending motions are **DENIED as moot**, all hearings are **CANCELLED**, and any deadlines are **TERMINATED**.
6. Pursuant to FED. R. CIV. P. 58, the Court will enter final judgment separately.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of March 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record